UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 6:07-376-KKC

SHARLENE BURKE,
*for A.R.B., a child,*                                                                  PLAINTIFF

v.                                    **OPINION AND ORDER**

MICHAEL J. ASTRUE,
Commissioner of Social Security,                                               DEFENDANT

\* \* \* \* \* \* \* \*

This matter is before the Court on the Cross Motions for Summary Judgment filed by

Plaintiff Sharlene Burke, on behalf of Claimant A.R.B., a child [hereinafter "Claimant"] [R. 10] and

Defendant Commissioner Astrue [R. 11].  For the reasons stated below, Plaintiff's Motion is

**DENIED** and Defendant's Motion is **GRANTED**.

I.        **Factual and Procedural Background**

On September 15, 2004, Plaintiff Burke filed an application for Social Security Disability

Benefits and Supplemental Security Income on behalf of her daughter, the Claimant.  Plaintiff claims

that Claimant became disabled on December 1, 2001, due to the impairments of attention deficit

hyperactivity disorder [hereinafter "ADHD"], depression, anxiety, and seizure disorder.  Transcript,

at 280, 353 [hereinafter "Tr."].  Claimant is a child, and was twelve at the time the Administrative

Law Judge [hereinafter "ALJ"] issued his decision.  Plaintiff states that Claimant has had three to

four grand mal seizures per week since Claimant was eight or nine years old.  Tr., at 617, 620.

Plaintiff also states that because of Claimant's ADHD, it takes her three to four hours to do her

homework in only one subject, even with Plaintiff's assistance; that she has problems focusing and

concentrating; that she is unable to care for herself; and that she scratches and bites herself on her

arms once or twice a week, leaving bruises.  Tr., at 280, 623-64.  Plaintiff states that Claimant's

seizures leave her confused and unable to speak, walk, or move correctly, and that she cannot regain her strength for hours afterwards. Tr., at 61, 69, 85, 87, 353. Plaintiff also claims that Claimant has no friends, that she lies about serious things, that she is impulsive, that she fights with her siblings, that she resists authority, and that she has outbursts of anger. Tr., at 615, 627, 635-36, 638. Plaintiff indicates that Claimant has been taking Lamictal, Stratera, Lexapro, Tetracycline, and Neurontine on a daily basis. Tr., at 65, 88, 125, 415. Plaintiff testified that Claimant has never had a seizure while at school. ALJ's Opinion, at 2.

Plaintiff further claims that Claimant cannot read or spell very well, sometimes cannot tell time or count money, has trouble remembering, is constantly depressed, and has low self-esteem. Tr., at 353, 359-68. However, Plaintiff also indicated that Claimant can read capital and lowercase letters, read simple words, print some letters, write in longhand, and spell most three to four-letter words. Tr., at 363. Claimant is taking medication for her ADHD, depression, and seizure disorder. Tr., at 619, 621, 632. At the administrative hearing, Plaintiff was unable to recall Claimant's most recent grades or what subjects Claimant was taking, and Claimant stated that she did not know her teachers' names. Tr., at 611, 645. Plaintiff also testified that Claimant plays outside with other children who live nearby, enjoys riding four-wheelers, and was once on the school basketball team.

At the time the ALJ's decision was issued, Claimant was enrolled in regular sixth grade classes. She has not needed to repeat any grades. Tr., at 280, 610. Plaintiff testified that Claimant can read some things, and makes Cs, Ds, and maybe Fs. Tr., at 280, 611, 624. Letters from one of Claimant's teachers, Cindy Issacs, indicate that Claimant had difficulty focusing and working independently in late 2002; Issacs attributed this to Claimant's new seizure medications. Tr., at 92-94. However, Issacs noted that Claimant's previous teacher saw no problems with Claimant's ability to focus. Tr., at 92. Moreover, in a Teacher Questionnaire from August 2002, Issacs stated that

2

Claimant had no problems acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, or caring for herself. Tr., at 99-106.  It was noted that Claimant completed her homework assignments, and would have received even better grades if she would only check and correct her work.  Tr., at 94; ALJ's Opinion, at 5.  Her grades at this time were two Fs, an A+, and a B.  Tr., at 94.  In response to these letters from Issacs, Plaintiff stated that Claimant had always been a good child and had always made good grades.  Tr., at 95.  Claimant apparently even made the honor roll at least once.  ALJ's Opinion, at 5.

Individual profile reports of Claimant from grades one and two indicated "partial mastery" or "full mastery" in a large majority of her tested areas.  Tr., at 110-12.  An additional Teacher Questionnaire submitted by Wendy Wallace in October 2004 reflected the same "no problems" assessment in all areas that Issacs' questionnaire did.  Tr., at 389-96.  The number of days Claimant has been absent from school has increased over the years, though in the 2000-2001 school year, Claimant only missed one day of school.  Tr., at 400.  Many of Claimant's grades from Burnside Elementary School consist of As, Bs, and "Satisfactory," along with several Cs.  Tr., at 407-10.  Also, in 2002, Claimant was rated "At Age Appropriate Level" in all academic areas; was rated "Excellent," "Good," or "Average" in all progress assessments; and received "Satisfactory" in most life skill assessments and "Needs Improvement" in several others.  Tr., at 407.  Further grade reports from Pulaski County schools indicated grades primarily of As, Bs, and "Satisfactory," with some Cs and "Needs Improvement."  Tr., at 130.  The ALJ also noted Claimant's testimony that she received an A in music or art, is poor in math, and has problems with reading "off and on," but that she otherwise likes school and has no problems with the other students there.  ALJ's Opinion, at 2.  A January 2004 Teacher Questionnaire indicated that Claimant has average academic ability, is shy but cooperative, that she can comprehend and follow directions most of the time, that she occasionally

"spaces out," and that she has some hygiene issues.  Tr., at 133-36.  There are no records of any

hygiene-related disciplinary issues, however, and there are also no indications that Claimant received

any type of special handling or placement in the school setting.  ALJ's Opinion, at 6.  Plaintiff

claimed that in 2005, Claimant received an in-school suspension for talking too much, although there

were no other instances of disciplinary action, and that her grades consisted of one A, two Bs, one C,

two Ds, and one F.  ALJ's Opinion, at 2-3.  However, besides the intermittent discussions of

Claimant's grades above, the administrative record contains few grade reports from Claimant's years

of education, and none from the time when she was on the honor roll.  Tr., at 90-122, 129-36, 384-

412; ALJ's Opinion, at 5.

Claimant's medical records are illustrative of the impact of her alleged impairments.  Plaintiff

submits records from Lake Cumberland Regional Hospital [hereinafter "Lake Cumberland"] from

December 2001 to July 2002.  An examination performed on December 19, 2001 revealed normal

computed tomography of Claimant's brain, without contrast.  Tr., at 166.  An awake EEG conducted

on January 11, 2002 was normal for Claimant.  Tr., at 169.  Other Lake Cumberland records indicate

treatment for a leg injury in 2002.  Tr., at 156-61.  During this time, records consistently note that

Claimant had no assessed barriers to learning or psychological/social needs.  Tr., at 144, 148, 160.

In addition, Claimant's file contains medical records from the University of Kentucky

Hospital and Kentucky Clinic.  November 12, 2002 examination results were normal.  Claimant's

brain was unremarkable in appearance, with no evidence of abnormalities.  Tr., at 201.  On May 24,

2002, Dr. Rosario Maria S. Riel-Romero noted that Claimant's first seizure occurred on December

17, 2001.  A CT scan and other examinations were normal.  Additional seizures occurred later that

December and on May 19, 2002.  Testing, including an EEG, still appeared normal.  Claimant was

described as very cooperative, interactive, and social, as well as alert, active, and not in distress.  Dr.

4

Romero prescribed Tegretol at this time.  Tr., at 196-99.  In June 2002, Claimant was examined for what appeared to be an allergic reaction to her medication.  Dr. Robert Baumann noted that Claimant had no seizures since her last visit in May 2002, and that she appeared happy, pleasant, and outgoing.  Her medication was switched to Neurontin.  Tr., at 194.  An EEG performed on this date returned abnormal and led to a diagnosis of benign epilepsy of childhood with central temporal spikes.  Tr., at 192-93.

On July 26, 2002, Dr. Romero noted that Claimant had reported two more seizures since she was last put on Neurontin.  However, her general and neurological examinations were normal.  Tr., at 189-90.  On October 21, 2002, Dr. Romero reported that Claimant had developed behavioral and attentional difficulties since being changed to a different dosage of medication.  Dr. Romero noted that Claimant was quiet and cooperative, and that Plaintiff told her that Claimant would sometimes hurt herself and other children, and that her most recent grades were As, Bs, and Fs.  Tr., at 186-87.  Claimant's examinations appeared normal, she was diagnosed with partial seizures, and was prescribed an increase of Lamictal.  Tr., at 187.  On December 2, 2002, Dr. Romero reported that Claimant had not had a seizure since October 16, 2002, and that her behavioral and academic problems had improved since being prescribed Lamictal in October.  Tr., at 183-84.  Claimant again appeared normal on examination, and Dr. Romero stated that she was pleased with Claimant's progress.  Tr., at 183.

Dr. Romero continued to follow up with Claimant through 2005.  On February 3, 2003, Dr. Romero reported that Claimant had no seizures since October 2002, and that she was doing better in regular third grade classes with grades of As, Bs, and one C.  Tr., at 469.  Her general and neurological examinations were unchanged.  Tr., at 469.  Dr. Romero saw Claimant again on May 6, 2003.  Dr. Romeo reported that Claimant tolerated her medication well, that she had still had no

additional seizures, and that a November 2002 MRI returned normal.  Tr., at 467.  On July 16, 2003, Dr. Romero noted Plaintiff's opinion that Claimant was doing better and focusing better, though Plaintiff also reported that Claimant can be unfocused and is unable to complete her tasks on time.  No additional seizures were reported.  Claimant's general and neurological exams appeared normal.  Tr., at 465.  On November 13, 2003, Dr. Romero noted that Claimant was seeing psychiatrist Dr. Patel, that Claimant had problems with hyperactivity and depression, and that she demonstrated a very detached attitude, not wanting to smile, pay attention, or follow instructions.  However, she also noted that Claimant had no additional seizures, that she had made the honor roll at school, and that she denied any stressors at home or school.  Tr., at 463-64.  The last record of Dr. Romero seeing Claimant was from March 10, 2004.  Dr. Romero reported that Claimant was doing well without any further seizures, that her parents thought she was doing better, and that there was some diminution in her grades.  Tr., at 461.  Claimant's examinations again appeared normal.  Dr. Romero diagnosed Claimant with epilepsy and continued her on her then-current medications.  Tr., at 461.

Dr. Baumann examined Claimant on October 26, 2004.  Dr. Baumann stated that although Claimant's seizures had decreased, they had not stopped.  He also reported that, "[Claimant] apparently is having about one [seizure] a month or so.  The mother is pleased."  Tr., at 460.  Dr. Baumann also noted that Claimant has a number of behavioral problems and is in a special education.  Claimant appeared to Dr. Baumann to be a happy, pleasant, and outgoing girl.  Tr., at 460.  Dr. Baumann also reported on April 26, 2005 that Claimant had been seizure-free since last October, that there has been a marked improvement in her school performance, and that he was quite pleased with how Claimant was doing.  Dr. Baumann recommended switching the dosage of Claimant's medication.  Tr., at 459.

Dr. Bobby J. Kidd examined Claimant on October 1, 2002.  The chief complaint was that

disability was sought for seizure disorder.  Plaintiff reported to Dr. Kidd that Claimant had three to

four grand mal seizures per week, which lasted three to four minutes at a time.  No abnormal results

were found on examination of Claimant, including her neurologic examination.  Tr., at 170-73.  Dr.

Blaine J. Pinaire conducted an examination of Claimant on October 7, 2002.  Tr., at 174-76.  Dr.

Pinaire reported that Claimant was talkative, not shy, and at times difficult with Plaintiff.  Plaintiff

reported problems of Claimant fighting with her classmates and siblings, throwing temper tantrums,

and occasionally hitting her mother and biting herself.  Though Plaintiff stated that Claimant is

unable to get along with children her age, Claimant stated that she had friends outside of school and

enjoyed being with them.  Upon testing by the examiner, Claimant was unable to do simple

mathematical calculations, say the letters of the alphabet, or answer various general knowledge

questions.  Dr. Pinaire deferred a prognosis, concluded that Claimant is hyperactive and has

oppositional behavior, but opined that Claimant may have been demonstrating this behavior even

before her seizures.  Tr., at 174-76.  Claimant was also treated at Adanta Group Clinical Services on

November 15, 2004.  She was diagnosed with ADHD and epilepsy, by report, as well as depressive

disorder and generalized anxiety disorder, and assessed a Global Assessment of Functioning

[hereinafter "GAF"] score of fifty-five.  Tr., at 439-40.  State agency consultants Lea Perritt, William

Underwood, Dennis Penn, and Ed Ross reviewed Claimant's medical record in December 2004 and

March and April 2005.  Tr., at 441-55.  They determined that although Claimant has the severe

impairments of ADHD, depressive disorder, generalized anxiety disorder, and seizure disorder, these

impairments are not of listing-level severity and Claimant is therefore not disabled.

 Plaintiff also submits records from treating physician Dr. Piyush D. Patel.  During Dr. Patel's

initial examination on November 19, 2002, Dr. Patel ruled ADHD, but diagnosed Claimant with

seizure disorder and a GAF score of sixty.  Tr., at 178-79.  Dr. Patel did not assess any further GAF

scores throughout Claimant's treatment.  After a September 2003 office visit, Dr. Patel noted that

Claimant had not been doing well since her last visit, as Claimant had allegedly had a violent

episode in school.  On examination, Claimant appeared alert and cooperative, and not explosive or

violent.  Tr., at 240.  Dr. Patel reported a normal EEG in October 2003.  Tr., at 238.  Mental-status

examinations conducted by Dr. Patel in 2003 and 2004 reported Claimant to be alert, cooperative,

calm, with an appropriate mood, and with logical and goal-oriented thought processes.  On several of

these examinations, Claimant's attention was described as "easily distracted," but in a large majority

of the examinations, including the last one in 2004, Claimant's attention was described as "focused."

Dr. Patel diagnosed Claimant with ADHD.  Tr., at 229-31, 235-43, 421-31.  Further examinations in

2005 and 2006 mirrored these results, with Claimant's attention always described as "focused,"

although Dr. Patel also noted delusional thought processes and suicidal ideation.  Tr., at 586-90.  In

August and December of 2005, Plaintiff also reported to Dr. Patel that Claimant's medications were

helping with her depression.  Tr., at 588-89.

Claimant has attended Phoenix Preferred Care [hereinafter "Phoenix"] since late 2002 for

treatment of her ADHD, depression, and anxiety impairments.  A November 2002 assessment

described Claimant as exhibiting violent behavior, a depressed attitude, having a short attention

span, and being unhappy.  Tr., at 568-69.  An assessment completed on January 20, 2003 indicated

that Claimant's symptoms are consistent with ADHD and oppositional defiant disorder.  The

prognosis was fair to good with compliance to treatment.  Tr., at 205.  2003 assessments describe

violent or aggressive behavior in Claimant, state that she has a very short attention span and is

unable to concentrate on tasks for more than several minutes, defies authorities, and often does not

turn in her homework assignments.  Tr., at 550-65.  It is also noted that Claimant's ADHD and

depressive symptoms improve with medication, such as Strattera.  Tr., at 570, 577.  An October 2003

8

assessment noted that Claimant participates in a team sport and does average in school, according to Plaintiff.  Tr., at 582.  This assessment also noted that Plaintiff reported more problems in Claimant's behavior than are typically noted for parents of girls aged six to eleven.  Tr., at 582.

Phoenix records from 2004 report the same violent tendencies, mood swings, and depressive symptoms as in previous years.  It is noted that Claimant sometimes does not complete or turn in assignments and cannot concentrate on tasks at hand.  Her GAF score was assessed at forty.  These notes record Claimant's continued therapy and medication, and report some progress on her various symptoms.  They also report a favorable response to medication.  Tr., at 507-27.  It was also noted that Claimant had not had a seizure in almost two years.  Tr., at 575.  On October 18, 2004, Claimant's licensed clinical social worker at Phoenix, Pamela Trabish-Eads, diagnosed her with ADHD, depressive disorder, and seizure disorder, assessed her GAF score to be fifty, and noted that her depressive symptoms improve with the use of medication.  Tr., at 436.  Her 2005 Phoenix records report increased instances of violent tendencies and outbursts in Claimant's behavior, behavioral problems, depressive attitudes, and attention/concentration issues.  Tr., at 494-506, 528-37.  Eads diagnosed Claimant as bipolar with ADHD and assessed a GAF score of thirty-seven.  Tr., at 530-37.  In 2006, therapeutic assistant Kathy Phelps opined that Claimant has extreme limitations in her ability to care for herself, less than marked limitations in her ability to interact and relate with others, and no limitations in any other area.  Tr., at 492.  In addition, a July 2006 MRI performed by Dr. Mark A. Henry returned normal, while an EEG from the same month performed by Dr. Meriem Bensalem Owen returned abnormal.  Tr., at 598, 604.

Plaintiff's disability application on behalf of Claimant was denied initially and upon reconsideration.  Plaintiff and Claimant testified at a hearing before ALJ Frank Letchworth on April 25, 2006, and on June 16, 2006, the ALJ issued an opinion denying Plaintiff's disability application.

The ALJ determined that Claimant has the severe impairments of ADHD, depression, and seizures (controlled with medication).  ALJ's Opinion, at 3.  However, the ALJ also found that these impairments were not of listing-level severity, since they do not meet, medically equal, or functionally equal the listed impairments.  *Id.* at 4-7.  Therefore, Claimant was not found to be disabled.  The Social Security Appeals Council denied review of the ALJ's decision, thus making it the final decision of Defendant Commissioner Astrue, and Plaintiff brought the present action before this Court to review the ALJ's decision.

## II.    Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994). The Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Further, when reviewing the ALJ's decision, the Court cannot review the case de novo, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as its own opinion, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152

Fed. Appx. 503, 506 (6th Cir. 2005).

## III.     Analysis

Plaintiff argues that the ALJ improperly disregarded the notes and opinions of Claimant's therapist when he assessed Claimant's functional limitations.  Consequently, Plaintiff argues that the ALJ did not sufficiently assess Claimant's functional limitations, and that disability has been established in this case.  Plaintiff's Motion, at 3-4.  The Court will address this contention as two sub-arguments: first, the rejection of the therapist's notes and opinions, and second, the assessment of Claimant's functional limitations and non-disability finding.

## A.     The ALJ Properly Rejected the Therapist's Notes and Opinions

Plaintiff argues that the ALJ improperly disregarded the notes and opinions of Claimant's therapist at Phoenix Preferred Care.  Plaintiff states that Claimant has a history of treatment at Phoenix since 2003, that these records are uncontradicted, and that there is no other opinion evidence found in the record regarding Claimant's mental or psychological well being.  *Id.* at 4.  Specifically, Plaintiff states that Claimant's licensed clinical social worker diagnosed Claimant as bipolar with ADHD and described Claimant as extremely defiant, avoiding all obligations, very hyperactive, and having poor social skills, among other things.  *Id.*; Tr., at 495.  Plaintiff argues that Ms. Eads' opinions and notes were improperly dismissed when the ALJ determined that "the therapist's opinions were influenced by Ashley's mother's input and her accuracy/motivation are suspect."  ALJ's Opinion, at 3.  Plaintiff asserts that the uncontradicted opinion of a treating source is entitled to complete deference, and therefore, the ALJ erred in rejecting the above.  Plaintiff's Motion, at 3.

The Social Security Regulations instruct the ALJ that he must consider any submitted medical opinions when he makes his disability determination.  20 C.F.R. § 416.927(a)(2), (b).

11

Moreover, if a medical opinion is provided by a treating source, it is entitled to substantial, if not controlling deference, unless the ALJ provides "good reasons" for discounting its evidentiary weight. 20 C.F.R. § 404.1527(d)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). However, these rules of deference only apply if the medical opinion is from an "acceptable medical source." 20 C.F.R. §§ 416.913(a); 416.927. If the source of the medical opinion is not considered an "acceptable medical source," the source's opinions or statements are merely considered "other" or "additional" evidence that the ALJ *may* consider in making his decision, but is not required to consider. *See Boyett v. Apfel*, 8 Fed. Appx. 429, 433 (6th Cir. 2001); *Eldridge v. Apfel*, 1999 U.S. App. LEXIS 5975, at *5-6 (6th Cir. Mar. 30, 1999). Consequently, the deferential reason-giving requirements for the rejection of a treating-source opinion necessarily do not apply where the source in question is not an "acceptable medical source." 20 C.F.R. § 404.1527(a)(1)-(2), (d)(2). Also, information provided by sources who are not considered "acceptable medical sources" cannot establish the existence of medically determinable impairments. SSR No. 06-03p.

  In her Motion for Summary Judgment, Plaintiff focused on the diagnoses, notes, and opinions of Claimant's licensed clinical social worker, identified in the Phoenix records as Pamela Trabish-Eads. The ALJ also stated that at the hearing, Plaintiff's counsel sought to focus on the GAF score of thirty-seven[1] that Eads assigned her. Under Sixth Circuit Court of Appeals precedent, however, social workers are not considered "acceptable medical sources." *See Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 472 (6th Cir. 2006); *Boyett v. Apfel*, 8 Fed. Appx. 429, 433 (6th Cir. 2001); *Eldridge*, 1999 U.S. App. LEXIS 5975, at *5-6. As such, the ALJ was not required to grant any deference to Eads' opinions regarding Claimant's impairments.

---

[1] A GAF score of thirty-seven indicates "some impairment in reality testing or communication . . . or major impairment in several areas such as work or school, family relations, judgement, thinking, or mood." Global Assessment of Functioning Scale, at 2.

Even though the Social Security Regulations' reason-giving requirements facially do not apply to "non-acceptable medical sources," the Social Security Rulings indicate that when opinions from such sources are considered,

> it would be appropriate to consider such factors as the nature and extent of the relationship between the source and the individual, the source's qualifications, the source's area of speciality or expertise, the degree to which the source presents relevant evidence to support his or her opinion, whether the opinion is consistent with other evidence, and any other factors that tend to support or refute the opinion."

Soc. Sec. Rul. 06-03p (2006).  As the ALJ explained, he determined that Eads' opinions were influenced by Plaintiff's input, causing him to question Eads' motivation and/or accuracy.  ALJ's Opinion, at 3.  The ALJ noted that Claimant has a history of treatment at Phoenix since 2003.  *Id.* He stated that Claimant's overall record at Phoenix showed improvement with medication and counseling, other than talking back to Plaintiff, throwing tantrums, and failing to adequately care for her self-hygiene.  *Id.*  Additionally, the ALJ noted that the teacher's report included in the Phoenix records appeared to be somewhat filtered, that Plaintiff admitted in testimony that Claimant had only a single in-school suspension with no other disciplinary problems afterwards, and that Claimant's own hearing demeanor during her testimony "was also quite unusual."  *Id.*  This analysis generally embraces several of the factors mentioned in the Social Security Ruling, such as extent of relationship, presentation of relevant evidence, and consistency with other evidence, and also considers other relevant factors that tend to refute the Phoenix opinions and notes.  The ALJ's decision to afford little evidentiary weight to Eads' opinions, including her assessment of a thirty-seven GAF score, was without error.

The same can be said of therapeutic assistant Kathy Phelps' opinion that Claimant has extreme limitations in her ability to care for herself, less than marked limitations in her ability to interact and relate with others, and no limitations in any other area.  Tr., at 492.  The Social Security

13

Rulings make it apparent that therapeutic assistants, such as Phelps, are not considered acceptable medical sources. The Rulings provide a non-exhaustive list of medical sources who are not acceptable medical sources. Soc. Sec. Rul. 06-03p (2006). Although "therapeutic assistants" are not explicitly included in this list, both "therapists" and "physician assistants" are so included, and the Ruling states that this list is not limited simply to the sources explicitly named. As such, "therapeutic assistants" would necessarily fall, by implication, within the list of medical sources who are not "acceptable medical sources." As with Eads' opinions and statements, Phelps' opinion need not be given the level of deference and consideration given to treating sources.

Moreover, the ALJ appropriately explained his rejection of Phelps' opinion using several of the factors discussed in the Social Security Regulations, just as the ALJ did for Eads' statements and opinions. The ALJ acknowledged that Phelps stated that Claimant has extreme limitations in caring for herself, but noted that Phelps' narrative reports relate mostly to hygiene and self-esteem issues. ALJ's Opinion, at 6. The ALJ also noted that there is a total absence of any special handling in Claimant's school setting, that Claimant had no major hygiene-related suspensions or discipline refractions, and that Claimant has not been given a special counselor or special placement. *Id.* This analysis embraces the same factors touched on in the ALJ's analysis of Eads' opinions: evidence in support of the opinion, consistency with other evidence, and other factors that tend to support or refute the opinion. Soc. Sec. Rul. 06-03p (2006). The ALJ's decision to accord little weight to Phelps' opinion of extreme limitations in Claimant's ability to care for herself was without error.

Plaintiff also faults the ALJ for not scheduling or suggesting that Claimant needed any additional psychological or psychiatric testing to take the place of the statements and opinions from the therapists at Phoenix. Plaintiff's Motion, at 4. Though Plaintiff cites no statutory authority for this, it appears that 20 C.F.R. § 416.917 governs this type of argument. "If your medical sources

14

cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests." 20 C.F.R. § 416.917. Under this provision, the ALJ has discretion to provide for further examination or testing if the record evidence is insufficient for the ALJ to reach a decision about the Claimant's disability claim. *See Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary."); *Struthers v. Comm'r of Soc. Sec.*, 1999 U.S. App. LEXIS 11102, at *7 (6th Cir. May 26, 1999) ("[T]he regulations do not require an [administrative law judge] to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." (internal quotation marks omitted)).

In this case, however, there was sufficient medical evidence for the ALJ to reach a decision about whether Claimant's impairments were of listing-level severity even without the Phoenix records. In particular, the treatment records of Dr. Romero and Dr. Patel, Claimant's school records and teacher reports, and the assessments of the state agency consultants all provide sufficient evidence for the ALJ to decide the disability matter, as is more fully explained below. Moreover, it should be remembered that "it is the duty of the claimant, rather than the administrative law judge, to develop the record to the extent of providing evidence of mental impairment." *Struthers*, 1999 U.S. App. LEXIS 11102, at *7. No error was committed here.

**B.    Substantial Evidence Supports the ALJ's Opinion**

Though Plaintiff does not explicitly argue that the ALJ's decision of non-disability is not supported by substantial evidence, this is at least implied in her Motion for Summary Judgment. *See* Plaintiff's Motion, at 4 ("The child's functional limitations have not been sufficiently assessed by the

15

ALJ."); *see also id.* ("Disability has been established in this case in that this child has at least, marked limitations in two areas of function and/or extreme limitations in at least one area . . . . The ALJ erred when he found otherwise.").  Moreover, Defendant argues at length in his Motion for Summary Judgment that substantial evidence does support the ALJ's decision.  *See* Defendant's Motion for Summary Judgment, at 3-14.  It is thus appropriate for the Court to treat the argument as raised for its review.

The Social Security Regulations provide that an individual under the age of eighteen shall be considered disabled if he or she has a medically determinable physical or mental impairment, or combination of such impairments, that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than twelve months.  20 C.F.R. § 416.906.  The ALJ must determine a child claimant's disability by utilizing a multi-step process.  First, the ALJ determines whether the claimant is doing substantial gainful activity; if so, the claimant is not disabled.  *Id.* § 416.924(a).  Second, the ALJ determines if the claimant has an impairment, or combination of impairments, that is "severe."  If the claimant does not have a severe impairment, he or she is not disabled; if the claimant does have a severe impairment, the analysis continues.  *Id.*  Finally, the ALJ must determine if the claimant's severe impairment meets, medically equals, or functionally equals the impairment listings, i.e, if the impairment is of listing-level severity.  *Id.*  If the claimant has an impairment of listing-level severity and it meets the duration requirement, the claimant is considered disabled.  *Id.*  If the claimant's impairment if not of listing-level severity, or it does not meet the duration requirement, the claimant is not disabled.  *Id.*

A further analysis is undertaken to determine if the claimant has an impairment of listing-level severity.  An impairment meets the impairment listings if the criteria for the impairment are

16

included in the Listing of Impairments for the Social Security Regulations.  *Id.* § 416.925(a)-(e).  An impairment medically equals the impairment listings if it is at least equal in severity and duration to the criteria of any listed impairment.  *Id.* § 416.926(a)-(e).  Finally, an impairment functionally equals the impairment listings if it results in "marked" limitations in at least two domains of general functioning, or if it results in "extreme" limitations in at least one domain of general functioning.  *Id.* § 416.926a(a).  There are six such domains of general functioning used by the Social Security Administration:

    1.      Acquiring and using information;
    2.      Attending and completing tasks;
    3.      Interacting and relating with others;
    4.      Moving about and manipulating objects;
    5.      Caring for yourself; and
    6.      Health and physical well-being.

*Id.* § 416.926a(b)(1)(i)-(vi).

      After considering the record evidence, the ALJ determined that Claimant is not engaging in substantial gainful activity, and that she has the severe impairments of ADHD, depression, and a seizure disorder (controlled with medication).  ALJ's Opinion, at 3.  However, the ALJ determined that Claimant is not disabled because her impairments are not of listing-level severity.  According to the ALJ, the record evidence failed to establish that Claimant's severe impairments met or medically equaled the listing of impairments.  *Id.* at 4.  Finally, the ALJ found that Claimant has no limitations in the domains of acquiring and using information, attending and completing tasks, and moving about and manipulating objects; that Claimant has less than marked limitations in the domain of interacting and relating with others, as well as in health and physical well-being; and that Claimant has marked, but not extreme, limitations in the domain of caring for yourself.  *Id.* at 5-7.  Therefore, the ALJ also determined that Claimant's severe impairments did not functionally equal the

impairment listings, and could not be of listing-level severity.  *Id.* at 7.  Since Claimant's

impairments were not of listing-level severity, the ALJ concluded that Claimant was not disabled

under the Social Security Regulations.  *Id.*

Plaintiff specifically takes issue with the ALJ's analysis of whether Claimant's impairments

are functionally equivalent to the listed impairments,[2] since she argues that Claimant "has at least,

marked limitations in two areas of function and/or extreme limitations in at least one area as required

in 20 C.F.R. Section 416.92a(b)(2)."[3]  Plaintiff's Motion, at 4.  However, the Court is required to

uphold the ALJ's determination if it is supported by substantial evidence in the administrative

record.  *See* 42 U.S.C. § 405(g); *see also Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th

Cir. 2005) ("This Court must affirm the Commissioner's conclusions absent a determination that the

Commissioner has failed to apply the correct legal standards or has made findings of fact

unsupported by substantial evidence in the record." (internal quotation marks omitted)).  Upon

review of the record evidence, Plaintiff's argument cannot be sustained: substantial evidence does

support the ALJ's determination that Claimant is not disabled.

Plaintiff alleges that Claimant has suffered from three to four seizures per week since she

was eight or nine years old.  Tr., at 617, 620.  However, as the ALJ noted, this allegation is

completely inconsistent with the record regarding Claimant's seizure frequency.  According to Dr.

Romero's treatment records, Claimant had no reported seizures between December 2001 and May

2002.  Tr., at 196-99.  In a June 2002 meeting with Dr. Baumann, he noted that Claimant had no

seizures since the previous visit in May 2002.  Tr., at 194.  Dr. Romero's records further indicate that

---

[2] Plaintiff does not raise any argument that Claimant's impairments meet or medically equal the listed impairments.

[3] This Court assumes that Plaintiff actually intended to refer to 20 C.F.R. § 926a(b)(2), as this is the relevant section of the regulations for the argument in question.

18

Claimant reported no seizures between October 2002 and March 2004.  Tr., at 461.  In October 2004, Dr. Baumann did note Plaintiff's report that Claimant was having about one seizure per month, but was unable to report any specific dates on which these seizures occurred, and also cryptically noted that Plaintiff was "pleased" with this.  Tr., at 460.  In April 2005, Dr. Baumann also reported that Claimant had no seizures since October 2004.  Tr., at 459.  Clearly, there were months-long periods of time in which Plaintiff told Claimant's doctors that Claimant had suffered no seizures, contrary to Plaintiff's testimony of three to four seizures per week over the course of many years.  Moreover, Plaintiff admitted in her hearing testimony that Claimant has never had a seizure during school.  ALJ's Opinion, at 2.  These blatant inconsistencies seriously undermine Plaintiff's credibility regarding the severity of Claimant's impairments and their effect on her functional domains, and support the ALJ's conclusions.

Plaintiff alleges that Claimant's impairments have had a disabling effect on Claimant's ability to concentrate, focus, and complete her schoolwork and other tasks.  Plaintiff claims that Claimant requires three hours' assistance on a single subject of homework in order to get her work completed.  Yet, as the ALJ pointed out, Plaintiff was unable to recall Claimant's most recent grades or any of her school subjects, a troubling admission for one who claims to spend at least three hours per night assisting Claimant with her work.  Tr., at 611, 645.  Indeed, the ALJ found this admission to be "highly suspicious," along with Claimant's alleged inability to recall any of her teachers' names.  ALJ's Opinion, at 5.  There is also record evidence which casts doubt on Plaintiff's claims here.  Claimant was enrolled in regular classes at the time of her hearing, she has never had to repeat any grades, and there are no school records suggesting that Claimant was ever enrolled in any type of special education classes.  Tr., at 280, 610; ALJ's Opinion, at 6.

Additionally, Plaintiff testified that Claimant's grades consist of Cs, Ds, and maybe Fs.  Tr.,

at 611, 624; ALJ's Opinion, at 2.  Although Claimant's educational records do reflect these grades, they also reflect many As, Bs, and "Satisfactory" grades, a 2002 assessment that Claimant was working "At Age Appropriate Level" in all academic areas, and a notation that Claimant was on the honor roll at one point.  Tr., at 90-122, 129-36, 384-412; ALJ's Opinion, at 2-3.  One of Claimant's teachers indicated that Claimant completed her homework assignments, and would receive even better grades if she would check and correct her work before turning it in.  Tr., at 94.  Dr. Baumann remarked in April 2005 that Claimant had experienced a marked improvement in her school performance.  Tr., at 459.  Several of Claimant's teachers indicated that Claimant had no problems focusing, or in any of the six functional domains.  Tr., at 92, 99-106, 133-36, 389-96.  One of Plaintiff's teachers did identify some problems with Claimant's ability to focus and work independently, but attributed this to a side effect of Claimant's medication.  Tr., at 92-94.  Plaintiff herself even admitted that Claimant had always been a good child and had always made good grades. Tr., at 95.  Records from Lake Cumberland note that Claimant has no assessed barriers to learning or psychological/social needs.  Tr., at 144, 148, 160.  Also, the ALJ noted that Claimant's educational records submitted by Plaintiff are notably sparce, suggesting that any further records would have shown better grades than Plaintiff claims, further undermining her claims about Claimant's disability.  ALJ's Opinion, at 5.  These records and statements provide significant evidence that Claimant's impairments do not cause any greater functional limitations than those assessed by the ALJ.

Additional records from Claimant's medical providers provide further evidence in support of the ALJ's decision that Claimant's impairments are not of listing-level severity.  Most of Claimant's general and neurological examinations, CT scans, MRIs, and EEGs appeared normal, though Plaintiff has submitted records of two EEGs that returned abnormal.  Tr., at 166, 169-73, 183, 189-

20

90, 192-93, 196-99, 201, 238, 240, 461, 465, 467, 469, 598, 604.  Mental-status examinations

conducted by Dr. Patel in 2003 and 2004 described Claimant as cooperative, alert, calm, with an

appropriate mood and a logical and goal-oriented thought process, as well as focused attention.  Tr.,

at 229-31, 235-43, 421-31.  This is quite consistent with most of the physicians' observations of

Claimant's mood and demeanor during her doctor visits.  Tr., at 174-76, 186-87, 194, 196-99.

Claimant's medical records also show that medication and counseling improved Claimant's

symptoms, something Plaintiff even admitted to Dr. Patel.  Tr., at 436, 507-27, 570-77, 588-89.  This

further undermines Plaintiff's disability claims and supports the ALJ's determinations.

Furthermore, despite allegations of Claimant's extremely destructive personal behavior from

Plaintiff and Phoenix, Claimant has had only one in-school suspension for talking too much, her only

recorded disciplinary action, and her doctors have often described her as calm, pleasant, social, and

cooperative.  Tr., at 174-76, 186-87, 194, 196-99; ALJ's Opinion, at 2-3.  Plaintiff testified that

Claimant has no friends, does not get along with other schoolchildren, and cannot take care of

herself.  However, Plaintiff also admitted that Claimant plays basketball with other children who live

nearby, rides four-wheelers, and played on the school basketball team.  Tr., at 280, 615, 623-24, 627,

635-36, 638; ALJ's Opinion, at 5-6.  Plaintiff also testified that she likes school and has no problems

with the other schoolchildren.  Tr., at 647-48.  The ALJ also found Claimant's hearing demeanor to

be quite unusual.  The ALJ noted that although Claimant had told a previous ALJ that she had

epilepsy and could tell time on a digital watch, she essentially went mute before the current ALJ, and

somehow recovered the ability to testify only when her attorney questioned her.  ALJ's Opinion, at 6.

Claimant had also been overheard speaking and laughing with Plaintiff just prior to her hearing, in

stark contrast to her behavior at the hearing soon after.  *Id.*  These inconsistencies obviously impugn

Plaintiff's and Claimant's credibility, and support the ALJ's decision.

21

Although many of the Phoenix records provide support for Plaintiff's contentions, particularly Eads' GAF assessment of thirty-seven and Phelps' opinion of extreme limitations in Claimant's ability to care for herself, the ALJ properly assigned these records little evidentiary weight, as discussed above.  In any case, the record contains assessments that directly contradict these findings, even from other Phoenix records.  In October 2004, less than one year before assessing Claimant's GAF to be thirty-seven, Eads assessed a higher GAF of fifty, and stated that she "can not clinically substantiate a disability at this time."  Tr., at 436.  In 2002, Dr. Patel assessed Claimant's GAF score to be sixty, and in 2004, Adanta Group Clinical Services assessed her GAF score to be fifty-five.[4]  Tr., at 178-79, 439-40.  In addition, state agency consultants reviewed the record evidence and determined that Claimant's severe impairments are not of listing-level severity with regards to any of the functional domains.  Tr., at 441-55.  These various assessments directly conflict with the rejected Phoenix opinions, and provide further evidence in support of the ALJ's conclusion that Claimant is not disabled.

The administrative record provides substantial evidence to support the ALJ's finding that Claimant's impairments do not meet or medically equal the impairment listings, and that they are not the functional equivalent of the listings in that Claimant does not have marked limitations in two functional domains or extreme limitations in one functional domain.  As long as there is substantial evidence to support the ALJ's decision, that decision must be upheld by the Court, even if an opposite conclusion could be drawn from the evidence of record.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Substantial evidence supports the ALJ's determination that Claimant is not disabled.  No reversible

---

[4]  These GAF scores indicate only "moderate symptoms . . . or moderate difficulty in social, occupational, or school functioning."  Global Assessment of Functioning Scale, at 2.

error was committed here.

**WHEREFORE,** For the reasons stated above:

     1.      Plaintiff's Motion for Summary Judgment is **DENIED;** and

     2.      Defendant's Motion for Summary Judgment is **GRANTED.**

Dated this 17th day of April, 2008.

**Signed By:**

**_Karen K. Caldwell_**

**United States District Judge**